UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* JAMES MARCHESE,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>CELL THERAPEUTICS, INC., et al.,<br><br>　　　　　Defendants. | No. C06-168MJP<br><br>ORDER ON DEFENDANT CELL THERAPEUTICS, INC.'S MOTION TO DISMISS PLAINTIFF'S EMPLOYMENT CLAIM |

　　　This matter comes before the Court on a motion by Defendant Cell Therapeutics, Inc. (CTI) to dismiss Plaintiff's employment claim under 31 U.S.C. § 3730(h). Neither side has requested oral argument on this motion. Having reviewed the materials submitted by the parties, the Court GRANTS Defendant CTI's motion to dismiss Plaintiff's Section 3730(h) claim because it is apparent on the face of Plaintiff's original and amended complaints that this claim is time-barred. The Court also finds that Plaintiff should not be granted leave to amend his complaint with respect to this claim because amendment would be futile. Therefore, the Court dismisses Plaintiff's Section 3730(h) claim against CTI with prejudice and without leave to amend. The reasons for the Court's order are stated below.

ORDER - 1

**Background**

On February 1, 2006, James Marchese filed a qui tam action in this Court, bringing claims against CTI and several other defendants under the federal False Claims Act (FCA), 31 U.S.C. § 3729 et seq.[1] According to the complaint, CTI is a Washington-based company that produced and sold a drug known as Trisenox, which was approved by the Food and Drug Administration for treatment of patients suffering from relapsed acute promyelocytic leukemia (APL). Mr. Marchese was employed by CTI as an Oncology Account Manager with responsibility for Trisenox sales in New Jersey and New York City.

The complaint includes allegations that CTI engaged in a number of improper sales and marketing practices in connection with Trisenox, such as: (1) improperly promoting "off-label" uses of Trisenox to treat diseases other than APL; and (2) making improper payments to physicians for the purpose of having physicians prescribe or order Trisenox. The complaint alleges that CTI's practices caused the United States to pay false or fraudulent claims related to Trisenox through Medicare and other government-funded health insurance programs. The complaint brings claims on behalf of the United States under 31 U.S.C. § 3729(a)(1)-(3). Mr. Marchese also alleges that he was demoted and ultimately terminated by CTI on September 27, 2002 in retaliation for engaging in activity protected by the FCA, in violation of 31 U.S.C. § 3730(h).

After the complaint was filed, the Court granted several extensions of time for the Government to decide whether to intervene in this case, pending the outcome of settlement discussions. On April 16, 2007, the Government elected to partially intervene in this case as to claims against CTI. The same day, the Government and CTI filed a stipulation to dismiss various claims against CTI, based on a settlement agreement in which CTI agreed to pay $10.5 million to resolve the Government's claims

---

[1] The complaint was filed under seal pursuant to 31 U.S.C. § 3730(b)(2), although the Court granted an unopposed motion by the Government to partially lift the seal in order to disclose the complaint to Defendants.

ORDER - 2

against the company. The stipulation did not resolve Plaintiff's employment claim against CTI under Section 3730(h).

On July 5, 2007, CTI filed the pending motion to dismiss Plaintiff's employment claim against CTI, arguing: (1) the claim is barred by the statute of limitations; and (2) the complaint fails to allege a Section 3730(h) violation. After this motion was fully briefed, Plaintiff filed an amended complaint on August 22, 2007.

**Analysis**

1. Standards for Evaluating Motions Brought Under Rule 12(b)(6)

CTI's motion to dismiss is brought under Fed. R. Civ. P. 12(b)(6). Under Rule 12(b)(6), the well-pleaded factual allegations in Plaintiff's complaint are accepted as true, although "[c]onclusory allegations of law and unwarranted inferences" are not sufficient to defeat a motion to dismiss. In re Verifone Sec. Litig., 11 F.3d 865, 868 (9th Cir. 1993).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989). However, one exception to this rule is that the Court may take judicial notice of "matters of public record" under Fed. R. Evid. 201. Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001). Here, Mr. Marchese asks the Court to take judicial notice of: (1) a complaint that CTI filed against him in this Court on December 31, 2003 in the matter of Cell Therapeutics, Inc. v. Sportelli, C03-3987P; (2) CTI's notice of dismissal of its claims against him in case number C03-3987P; and (3) statements attributed to Assistant U.S. Attorney Peter Winn in a Seattle Times newspaper article from April 18, 2007 regarding this case.[2]

---

[2] Plaintiff cites an unpublished 1998 Ninth Circuit decision to support his judicial notice arguments. See Response at 5 n.4 (citing Nordell Int'l Res. v. Triton Indonesia, Inc., 1998 U.S. App. LEXIS 2919 at * 7 (9th Cir. Feb. 20, 1998)). Plaintiff is reminded that Ninth Circuit rules generally prohibit citing unpublished decisions issued by the court before January 1, 2007. See Ninth Cir. Rule 36-3(c).

The Court will take judicial notice of the two documents filed in case number C03-3987 to the extent they are offered to demonstrate the fact that these documents were filed with the Court. The Court will also take judicial notice of the statement attributed to Mr. Winn in the Seattle Times article. As Mr. Marchese notes, the Ninth Circuit in Ritter v. Hughes Aircraft Co., 58 F.3d 454, 458-59 (9th Cir. 1995), indicated that judicial notice may be taken based on a newspaper article if the facts are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Because Mr. Winn is a counsel of record in this case, press statements attributed to him regarding this case are capable of accurate and ready determine by resort to Mr. Winn himself, who has not challenged the accuracy of his statements in the article.

2.      Statute of Limitations

CTI's first argues that Plaintiff's Section 3730(h) claim should be dismissed on statute of limitations grounds. Under Ninth Circuit law, a statute of limitations defense "may be raised by a motion for dismissal or by summary judgment motion." Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980). "If the running of the statute is apparent on the face of the complaint, the defense may be raised by a motion to dismiss." Id.

      A.      The Running of the Statute of Limitations for Plaintiff's Section 3730(h) Claim is Apparent on the Face of Plaintiff's Complaint

Section 3730(h) prohibits an employer from discriminating against an employee for taking lawful acts in furtherance of an FCA action. The FCA does not provide a statute of limitations for Section 3730(h) claims. See Graham County Soil & Water Conservation Dist. v. United States ex rel. Wilson, 545 U.S. 409, 415-22 (2005). As a result, claims under Section 3730(h) are governed by the "most closely analogous state statute of limitations." Id. at 422. As CTI notes, the laws of three different states could conceivably govern the statute of limitations for Mr. Marchese's Section 3730(h) claim: (1) Washington, where CTI is based; (2) New Jersey, where Mr. Marchese lived and performed some of his work for CTI; and (3) New York, where Mr. Marchese also performed work for CTI.

ORDER - 4

In Graham County, the Supreme Court compiled a list of state statutes that were "likely candidates for analogous state statutes of limitations" under Section 3730(h). Id. at 419 n.3. However, the Court indicated that the list "may well not be an exhaustive or authoritative list of the possibilities." Id. at 419.

The Graham County Court suggested that the most closely analogous state statue of limitations in Washington may be RCW 4.16.080(2), a "catchall" statute that sets a three-year limitations period for claims for injuries to persons. Id. at 419 n.3. CTI agrees that the three-year limitations period provided by RCW 4.16.080(2) would apply to Plaintiff's Section 3730(h) claim if Washington's statute of limitations governs. For New Jersey, the Court suggested that the applicable statute may be N.J. Stat. Ann. § 2A:14-1 (which sets a catchall two-year statute of limitations for injuries caused by wrongful acts) or § 34:19-5 (which sets a one-year statute of limitations for retaliation actions by whistle-blowers). Id. Here, CTI suggests that the one-year statute of limitations provided by N.J. Stat. Ann. § 34:19-5 would be the most analogous New Jersey statute. For New York, CTI notes that a New York district court recently found that a three-year statute of limitations period should apply to a False Claims Act retaliation claim. McKenna v. Senior Life Mgmt., Inc., 429 F. Supp. 2d 695, 700 (S.D.N.Y. 2006). Plaintiff does not dispute CTI's analysis regarding the potentially applicable statutes of limitations.

As a result, there is no dispute that the longest statute of limitations for Plaintiff's Section 3730(h) claim would be three years. On the face of Plaintiff's original and amended complaint, it is apparent that Plaintiff filed his Section 3730(h) claim more than three years after he was terminated by CTI. Plaintiff was terminated on September 27, 2002. (Original Complaint ¶ 125.) Plaintiff did not file this lawsuit until February 1, 2006, more than three years and four months after he was terminated.

In his response to CTI's motion, Plaintiff argues that the doctrine of equitable estoppel should be applied to extend the statute of limitations. However, Plaintiff's equitable estoppel argument relies on allegations in his response brief that were not pleaded in either the original or amended complaints.

ORDER - 5

Although Plaintiff suggests that he was not obliged to plead facts to support equitable estoppel in his complaint, the Ninth Circuit has held otherwise. In Guerrero v. Gates, 442 F.3d 697 (9th Cir. 2006), the court equated equitable estoppel with fraudulent concealment and held:

> Equitable estoppel, also termed fraudulent concealment, halts the statute of limitations when there is "active conduct by a defendant, above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time." The plaintiff must demonstrate that he relied on the defendant's misconduct in failing to file in a timely manner and "must plead with particularity the facts which give rise to the claim of fraudulent concealment."

Id. at 706-07 (quoting Conerly v. Westinghouse Elec. Corp., 623 F.2d 117, 120 (9th Cir. 1980)).

Here, Plaintiff original and amended complaints do not plead with particularity any facts to support his equitable estoppel arguments, nor is his equitable estoppel argument readily apparent from any judicially-noticeable exhibits that Plaintiff presented to the Court. As a result, Plaintiff's employment claim under Section 3730(h) is subject to dismissal because it is apparent on the face of his original and amended complaints that the statute of limitations for this claim has expired, regardless of whether the statute of limitations is borrowed from Washington, New Jersey, or New York law.

B.  Leave to Amend

The closer question presented by the pending motion is whether Plaintiff's Section 3730(h) claim should be dismissed with or without leave to amend. Because Plaintiff filed an amended complaint on August 22, 2007, Plaintiff may only amend his complaint with leave of the Court or by consent of the adverse parties. See Fed. R. Civ. P. 15(a). Leave to amend "shall be freely given when justice so requires." Id. Under Ninth Circuit law, an order granting a motion to dismiss "must be accompanied by leave to amend unless amendment would be futile." Knevelbaard Dairies v. Kraft Foods, Inc., 232 F.3d 979, 983 (9th Cir. 2000). Here, CTI argues that leave to amend should be denied on futility grounds

As noted above, Plaintiff's response to CTI's motion to dismiss includes a host of new factual allegations regarding his equitable estoppel argument that were not pleaded in his original or amended

ORDER - 6

complaint. Plaintiff states that "[s]hould the court deem it appropriate . . . Marchese is prepared to submit an affidavit and/or amend the Complaint to include additional facts supporting his equitable estoppel argument." (Response at 3 n.2.) In his response brief, Plaintiff makes the following assertions in support of his equitable estoppel theory:

> To avoid liability for its FCA violations and illegal retaliation, CTI made every effort to prevent Marchese from bringing suit against it. CTI even went so far as to file a frivolous action against Marchese on December 31, 2003 alleging that he had engaged in fraud, and seeking, among other things, a declaratory judgment that CTI's termination "did not violate any other statute or other law under which defendant Marchese might claim relief." Having effectively silenced Marchese, CTI voluntarily dismissed its claims fewer than three months later [on March 18, 2004].
>
> CTI was well aware that its suit against Marchese would deter him from filing an action against it, as it would coerce him into trying to negotiate a settlement that could mitigate the damage to Marchese's professional reputation that a protracted and highly publicized fraud action would cause. CTI was also well aware that its suit against Marchese would disparage Marchese's good name and credibility in a way that could disqualify Marchese as an effective Relator in a *qui tam* suit against CTI in the eyes of the Government, and calculated that the suit could even cause the Government to pursue charges against Marchese himself.
>
> CTI's suit against Marchese did in fact have this secondary effect of causing the Government to pursue a criminal investigation of Marchese, further deterring him from bringing his retaliation claim. Marchese initially disclosed CTI's fraud to the Government as early as November 19, 2002. On information and belief, the Government chose not to assist Marchese with his claims because it believed that CTI's suit against him impinged his credibility.
>
> After CTI filed suit against Marchese, the Government initiated an investigation, led by Jim Rogers of the FBI, who scrutinized Marchese's business and personal records for evidence of financial fraud which, having not ever occurred, was never found. Notably, Mr. Rogers, along with several individuals from the criminal division of the Department of Justice, were present at Marchese and his counsel's June 2004 meeting with the United States Attorneys' Office in Seattle. Indeed, as reported in the Seattle Times, Seattle AUSA Peter Winn himself admits that it was CTI's suit against Marchese that initiated the federal investigation into CTI's practices. The deterrent effect of CTI's lawsuit continued well after the voluntary dismissal of the suit because it turned the Government against Marchese, causing him to further delay the filing of this FCA claim, including the retaliation claim against CTI.
>
> As a result of CTI's lawsuit and misrepresentations smearing Marchese, the Government continued to delay its investigation and stonewall Marchese well after March 18, 2004, through June 16, 2004, when it expressly threatened to criminally indict him if he filed his claims. The Government's threat remained until[] Marchese was assured immediately prior to February 1, 2006 that it would not be pursing criminal charges against him. Marchese immediately filed his Complaint on February 1, 2006 upon the Government's withdrawal of its threat.

ORDER - 7

> Marchese acted on his fears and miscalculations caused by CTI's conduct to his detriment by waiting to file his retaliation claim until February 1, 2006, more than three years after the date he was terminated from his position at CTI . . . .

(Response at 3-5) (internal citations and footnotes omitted.)

Plaintiff suggests that these allegations are sufficient to equitably estop CTI from invoking a statute of limitations defense for the period between December 31, 2003 (the date that CTI filed its complaint against Mr. Marchese) to February 1, 2006 (the date Mr. Marchese filed his complaint). Although these allegations were not included in Plaintiff's original or amended complaints, the Court will consider the new allegations for the purpose of determining whether Plaintiff should be granted leave to amend his complaint. See, e.g., In re Terrorist Attacks on September 11, 2001, 462 F. Supp. 2d 561, 564-65 (S.D.N.Y. 2006) (considering materials included in a response to a motion to dismiss in determining whether leave to amend should be granted).

As CTI notes, the Ninth Circuit has held that "[w]here a district court applies or borrows a state statute of limitations, it is also required to apply the state's equitable exceptions, to the extent these are consistent with federal law." Emrich v. Touche Ross & Co., 846 F.2d 1190, 1199 (9th Cir. 1988). Therefore, the Court must determine whether the new factual allegations in Plaintiff's response brief would support his equitable estoppel argument under either Washington, New Jersey, or New York law. To make this determination, the Court reviews each state's laws regarding equitable estoppel.

Under Washington law, "equitable estoppel is not favored." Peterson v. Groves, 111 Wn. App. 306, 310 (2002). "The gravaman of equitable estoppel with respect to the statute of limitations is that the defendant made representations or promises to perform which lulled the plaintiff into delaying timely action." Id. at 311. Put another way, "[e]stoppel is appropriate to prohibit a defendant from raising a statute of limitations defense when a defendant has 'fraudulently or inequitably invited a plaintiff to delay commencing suit until the applicable statute of limitations has expired.'" Id. at 310-11 (internal citation omitted). A party asserting equitable estoppel must prove:

ORDER - 8

"(1) an admission, statement, or act inconsistent with a claim afterward asserted; (2) action by another in reasonable reliance on that act, statement, or admission; and (3) injury to the party who relied . . . ." Id. at 310.

In New Jersey, "[t]he requirements of equitable estoppel are quite exacting." W.V. Pangborne & Co. v. N.J. Dep't of Transp., 562 A.2d 222, 227 (N.J. 1989). Similar to Washington law, New Jersey courts have noted that "[e]quitable estoppel has been used to prevent a defendant from asserting the statute of limitations when the defendant engages in conduct calculated to mislead plaintiff into believing that it is unnecessary to seek civil redress." Kaprow v. Board of Educ. of Berkeley Twp., 622 A.2d 237, 246 (N.J. 1993). See also Knight v. Brown Transp. Corp., 806 F.2d 479, 484 (3d Cir. 1986) (applying New Jersey law and noting that its equitable exceptions have been applied to "situations in which (1) a defendant has lulled a plaintiff into a false sense of security by representing that a claim will be amicably settled without the need for litigation; or (2) a defendant has failed to disclose information which he had a statutory duty to disclose, and such non-disclosure prevented a plaintiff from realizing that he possessed an actionable claim."). As in Washington, reliance is an element of equitable estoppel. See, e.g., W.V. Pangborne, 562 A.2d at 227 (defining equitable estoppel as "the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed . . . as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse . . .").

Under New York law, equitable estoppel is an "extraordinary remedy" which is "only applicable in circumstances where there is evidence that plaintiff was lulled into inaction by defendant in order to allow the statute of limitations to lapse." East Midtown Plaza Housing Co. v. City of New York, 218 A.D.2d 628, 628 (N.Y. App. 1995). New York courts have also held that "in order for the equitable estoppel doctrine to apply, a fiduciary relationship must exist between the parties." Id. A

ORDER - 9

plaintiff seeking to invoke the doctrine "must demonstrate reasonable reliance on the defendant's misrepresentations." Pahlad v. Brustman, 33 A.D. 3d 518, 519 (N.Y. App. 2006).

The equitable estoppel requirements of each state bear strong similarities. In particular, case law from each state emphasizes that equitable estoppel generally applies in cases where a defendant "lulled" the plaintiff into delaying suit until the statute of limitations had passed. In each state, the plaintiff must also demonstrate reliance.

Here, Plaintiff's equitable estoppel arguments stem from the fact that CTI filed a lawsuit against him in this Court on December 31, 2003. This action was brought against both Plaintiff and CTI employee Peter Sportelli, who allegedly was Mr. Marchese's supervisor. This lawsuit, which was assigned to the undersigned judge under case number C03-3987P, raised common-law fraud claims against both Mr. Marchese and Mr. Sportelli. The complaint also alleged that Mr. Marchese had threatened to bring a wrongful termination suit against the company. Among other things, CTI sought a declaratory judgment that "its termination of defendant Marchese was due to his fraudulent and/or improper conduct and did not violate any other federal statute or other law under which defendant Marchese might claim relief." (CTI Complaint ¶ 30.)

On March 18, 2004, CTI voluntarily dismissed its claims against Mr. Marchese without prejudice. Mr. Marchese never appeared in the matter and CTI never filed proof that the complaint was served on him. CTI continued to pursue its claims against Mr. Sportelli, but later dismissed those claims without prejudice in May 2005.

Arguably, Mr. Marchese could have been deterred from filing his own lawsuit against CTI during the several months when CTI's claims against him were pending in this Court. Because CTI sought a declaratory judgment that Mr. Marchese had not been wrongfully terminated, there was little reason for Mr. Marchese to file his own lawsuit while CTI's claims against him were pending; Mr. Marchese could have simply raised his claims as counterclaims in the CTI lawsuit. In total, CTI's claims against Mr. Marchese were pending in this court for 79 days, counting both the filing date and

ORDER - 10

1 dismissal date and taking into account the fact that 2004 was a leap year.[3] However, even if those 79

2 days are excluded from the limitations period, Plaintiff still needed to bring his Section 3930(h) claim

3 by mid-December 2005 in order to meet a three-year statute of limitations. Instead, he did not file his

4 claim until February 1, 2006. As a result, the pendency of CTI's claims against Mr. Marchese from

5 December 31, 2003 to March 18, 2004 does not by itself provide a sufficient basis to excuse Plaintiff's

6 untimely filing of his Section 3930(h) claim.

7 Mr. Marchese suggests that CTI filed the suit in order to deter him from filing his own suit

8 against CTI, to discredit him in the eyes of the Government, and to potentially cause the Government

9 to pursue charges against Mr. Marchese. Even assuming the truth of these allegations, Plaintiff's

10 allegations do not support his equitable estoppel theory for several reasons.

11 First, Mr. Marchese does not allege that CTI made any promises or misrepresentations that

12 "lulled" him into allowing the statute of limitations to expire. As CTI notes, Mr. Marchese essentially

13 claims that CTI's suit created a risk that plaintiff would be criminally prosecuted and that he chose not

14 to delay pursuing his claims against the company in order to avoid that risk. (Reply at 6.) However,

15 Mr. Marchese cites no persuasive authority suggesting that equitable estoppel may be invoked in such

16 circumstances.

17 Mr. Marchese's equitable estoppel argument turns in large part on his allegation that the

18 Government threatened in June 2004 to criminally indict him if he pursued claims against CTI.

19 However, as CTI notes, an equitable estoppel claim must be based on the conduct of the defendant,

20 rather than on the conduct of a third party such as the Government. Although Plaintiff suggests that

21 CTI's lawsuit against him had the "secondary effect" of causing the Government to pursue a criminal

---

[3] CTI calculates this time period as 76 days. CTI is apparently not taking into account February 29, 2004 nor counting both the filing date and dismissal date of the claims against Mr. Marchese.

ORDER - 11

investigation against him, Plaintiff cites no authority suggesting that such a "secondary effect" of a defendant's conduct may serve as the basis for invoking equitable estoppel.

Finally, Plaintiff has offered no allegations suggesting that he relied on any acts or misrepresentations by CTI in waiting to file his Section 3730(h) claim after the statute of limitations had expired. As noted above, reliance is a necessary element of equitable estoppel under the laws of Washington, New Jersey, and New York.

In short, even accepting as true the new allegations that Plaintiff offers in his response to CTI's motion, Plaintiff has not alleged sufficient facts to support his theory that CTI should be equitably estopped from invoking a statute of limitations defense to Plaintiff's Section 3730(h) claim. As a result, it would be futile to permit Plaintiff to file an amended complaint that includes the allegations raised in his response to CTI's motion to dismiss.

CTI filed its motion to dismiss on July 5, 2007. Since that time, Plaintiff has had two opportunities to present his strongest allegations in support of his equitable estoppel argument: (1) his response to CTI's motion; and (2) the amended complaint he filed on August 22, 2007. However, neither his response nor his amended complaint provide sufficient allegations to support an equitable estoppel argument. Under these circumstances, the Court concludes that it would be an exercise in futility to provide Plaintiff with yet another opportunity to allege facts to support his theory that CTI should be equitably estopped from asserting a statute of limitations defense to his Section 3730(h) claim. Therefore, the Court will dismiss Plaintiff's Section 3730(h) claim against CTI with prejudice and without leave to amend.

3. <u>Other Argument for Dismissal</u>

CTI also argues that Mr. Marchese's Section 3730(h) claim should be dismissed because he fails to allege that CTI terminated him for engaging in activity protected by the FCA. Because the Court finds that Mr. Marchese's Section 3730(h) claim is subject to dismissal with prejudice on statute of limitations grounds, it is not necessary for the Court to reach this alternative argument for dismissal.

ORDER - 12

**Conclusion**

It is apparent from the face of Plaintiff's original and amended complaints that the statute of limitations has run on his Section 3730(h) claim, regardless of whether the applicable statute of limitations is borrowed from Washington, New Jersey, or New York law. Therefore, the Court GRANTS CTI's motion to dismiss Plaintiff's Section 3730(h) claim. The Court also finds that it would be futile to permit Plaintiff to amend his complaint with respect to his Section 3730(h) claim and therefore dismisses this claim with prejudice and without leave to amend.

The Clerk is directed to send copies of this order to all counsel of record.

Dated: September 6, 2007.

                                      s/Marsha J. Pechman
                                      Marsha J. Pechman
                                      United States District Judge